# STATE OF FLORIDA v SERRANO (Consolidated)
## Case No. 11332-WD
County Court, Dade County

April 5, 1991

**APPEARANCES OF COUNSEL**

Office of the State Attorney, for plaintiff.
Office of the Public Defender, for defendants.

## OPINION OF THE COURT

JONATHAN T. COLBY, County Judge (State of Florida v Vasquez)
NANCY POLLOCK, County Judge (State of Florida v Santos)

MARC SCHUMACHER, County Judge (State of Florida v Salablanca)

HARVEY N. SHENBERG, County Judge (State of Florida v Rodriguez)

SCOTT J. SILVERMAN, County Judge (State of Florida v Serrano)

## ORDER ON DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came on to be heard before this Court on the Defendants' Motion to Dismiss. The court having heard the argument of Counsel and being otherwise fully advised in the premises, this Opinion and Order are hereby entered:

The testimony elicited from the police officers during this Motion reveal various reasons why videos were neither made at the Miami Police Department's North and South Station nor at the B.A.T. mobile. These reasons include:

a. The video equipment was available but not used;

b. The video equipment was available but not operational; and,

c. The video equipment was unavailable for use.

For approximately eight (8) years prior to the City of Miami obtaining its own facilities to videotape, defendants charged with driving under the influence by the City of Miami Police Department, were taken to the Metro-Dade Police Department for processing and videotaping. During the period of time that the City of Miami used the Metro-Dade facilities they adopted the standard operating procedures of the Metro-Dade Police Department.

When the City of Miami began using the Intoxilyzer 5000 in approximately June, 1990, the City of Miami Police Department did not enter any written orders changing and/or modifying the policy that the Department had followed regarding videotaping for numerous years. The evidence demonstrates that the City of Miami Police Department had in full force and effect, from June, 1990 through the present, a policy to videotape all defendants charged with driving under the influence at their police facilities.

The testimony of certain officers from the city of Miami Police Department reflect a conscious and intentional policy to avoid gathering and/or preserving any exculpatory evidence that could be disclosed by videotaping defendants charged with driving under the influence. The failure to gather and/or preserve such potentially exculpatory evidence, once a policy has been established by the City of Miami Police Department setting forth the manner, appears in some instance

120

to have been motivated by an intent to suppress such evidence which could be beneficial to the successful defense of the charge.

The leading Supreme Court case of *California v Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), involved a criminal prosecution in which the State of California had introduced breath test results indicating the blood alcohol level in two motorists charged with drunk driving. The defendants sought to suppress the test results claiming that the State violated their constitutional rights guaranteed under the Fourteenth Amendment to the United States Constitution by failing to preserve the breath samples used in the tests. The Court rejected the defendants arguments for several reasons. First, "the officers here were acting in 'good faith and in accord with their normal practice.' " Id. at 2533. Second, in the light of the procedures actually used the chances that preserved samples would have exculpated the defendants were slim. Id. at 2534. Third, even if it were assumed that the breath tests were inaccurate and might therefore have been exculpatory, the defendants were not "without alternative means of demonstrating their innocence." Id.

In *Arizona v Youngblood,* 109 S.Ct. 333 (1988), the Supreme Court alluded to its decision in *Trombetta,* supra, and echoed the required showing that must be made in order for a defendant to prevail on a claim that he/she has been deprived of due process as a result of the State's failure to preserve evidence. The Supreme Court particularly emphasized the significance of good or bad faith on the part of the State. While holding that good or bad faith is irrelevant when the State fails to disclose materially exculpatory evidence, it is important when dealing with the issue of the failure of the State to preserve evidentiary material which might be exculpatory to the defendant. The Court stated:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice must clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. *We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.* [emphasis added]

> *Arizona v Youngblood* supra at 337.

The Court further observed that the presence or absence of bad faith

by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. Id. at 336. While the Court made clear that the police do not have a constitutional duty to perform any particular tests, in the present case, the City of Miami Police Department undertook an affirmative duty to videotape all D.U.I. arrestees.

The Second District Court of Appeal recently had the opportunity of addressing a case very similar to the one at bar. In *State v Powers,* 555 So.2d 888 (Fla. 2d DCA 1990), Pinellas County Judge Karl B. Grube dismissed driving under the influence charges against three defendants. Each of the defendants presented evidence that they performed the field sobriety tests better than the written reports indicated, and that a videotape would support their position. Id. at 889. Had a videotape been in existence, it would have been material in impeaching the field sobriety test reports and the testimony of the arresting and backup officers. Id. at 890. Judge Grube concluded that the police demonstrated bad faith by intentionally failing to preserve potentially exculpatory evidence of the defendants' successful performance on the field sobriety tests. Id.

The appellate court concluded, in pertinent part, that the defendants' due process rights were not violated when the sheriff's department did not videotape the defendants' field sobriety tests in accordance with its long standing policy. Id. at 891. However, the court in *Powers,* supra, recognized that "[c]ertain duties arise . . . once a policy of gathering evidence through certain tests is established." Id. at 890.

*Powers,* Id., is distinguishable from the present cases. In this case, the City of Miami established a policy of videotaping field sobriety tests. Thus arose the City of Miami's duty to gather evidence through the use of videotape. The City did not act in accordance with its longstanding policy, whereas in *Powers,* Id., the sheriff's department followed its policy of not videotaping field sobriety tests.

Based upon the evidence presented the Court finds that the City of Miami Police Department did not act in "good faith" in accordance with its normal policy. Moreover, Defendant presented evidence of "bad faith" on the part of the Defendant. The longstanding policy of the City of Miami was to videotape field sobriety tests of all persons charged with driving under the influence. There is much testimony by City of Miami police officers as to the actual operational performance of the video equipment. Much of the testimony is conflicting. Accordingly, the Court must resolve any and all inconsistency based upon the demeanor, frankness, and credibility of all the witnesses.

122

Assuming, arguendo, the video equipment was inoperable, the City of Miami exhibited "bad faith" by failing to undertake reasonable and appropriate efforts to repair or replace any defective or broken video/audio equipment. The City cannot on one hand espouse a policy of videotaping, and on the other ignore, in "bad faith", the effective implementation of that policy. It is therefore,

ORDERED AND ADJUDGED:

1. That this court will conduct a case by case review of all cases in which the City of Miami Police Department failed to videotape defendants charged with driving under the influence from June, 1990.

2. That by failing to videotape the defendants, the City of Miami Police Department did not act in accord with its normal policy. By failing to do so, and in light of the evidence adduced, this court finds that the City of Miami Police Department acted in "bad faith".

3. That the defendants shall bear the burden of demonstrating, through competent evidence, that had a videotape been made it would have been exculpatory.

4. That the defendants shall bear the burden of demonstrating, through competent evidence, the City of Miami Police Department's failure to make a videotape left the defendant without an alternative means of demonstrating their innocence.

DONE AND ORDERED in Chambers this 5th day of April, 1991, in Miami, Dade County, Florida.